LOUIS HANOVER, PETITIONER-RESPONDENT, v. PENN-BROOK GOLF CLUB, RESPONDENT-PROSECUTOR.

Argued January 20, 1932—Decided March 16, 1932.

Before Justices TRENCHARD, DALY and DONGES.

For the prosecutor, *Holmwood & Creighton.*

For the respondent, *Silber & Silber.*

PER CURIAM.

This writ of *certiorari* brings up for review the determination and judgment of the workmen's compensation bureau, awarding compensation to the petitioner-defendant, Louis Hanover, and against the respondent-prosecutor, Pennbrook Golf Club, for injuries alleged to have been sustained by accident in the course of and arising out of his employment on November 6th, 1930.

The first point made by the prosecutor is that the accident did not arise out of and in the course of the defendant's employment with the prosecutor.

The defendant worked for the prosecutor and his chief duty seems to have been to take care of the greens. There was a barn upon the premises, upon the first floor of which the golf club kept its tools. After finishing certain work on the greens, the defendant and other workmen were directed to take their tools to the barn and put them away. Thus far there appears to be no dispute about the facts, and there is no dispute of the fact that a short time after the defendant went into the barn he was hurt by a fall. The defendant gave three conflicting statements of the happening: (1) that as he was putting the tools away, a cross-beam fell on him and injured him; (2) that as he was climbing a ladder to get to the loft to sweep some hay away, he lost his balance and fell, and (3) that as he was clearing a space for the tools he attempted to climb a ladder to the loft and the ladder slipped and fell, throwing him to the floor of the barn and falling upon him.

None of these versions of the happening is supported by any evidence from any other person.

It appears beyond reasonable question from the testimony of the witnesses produced by the employer, that there was no movable ladder, and that the only ladder was a stationary one attached to the wall of the barn, which was in place after

the accident. This ladder was the means of access to the loft, which was located on the second floor and at one end of the barn, and in which hay was sometimes stored.

The witnesses for the prosecutor testified that Hanover attempted to climb to the cupola of the barn, which was on the roof of the barn; that there were pigeons in the cupola; that to reach the cupola, Hanover climbed up the inside of the barn above the loft; that he had removed his coat and hung it on a peg far above the loft, where it was found after the accident; that there was no occasion for Hanover to go above the first floor in the line of his work.

One of the prosecutor's witnesses testified that he called to Hanover to come down, but received no answer, and shortly thereafter he saw Hanover fall and hit a beam and then saw him fall to the floor.

From the testimony there can be no question that Hanover, for his own purposes, was endeavoring to get to the cupola of the barn; and that he was not going there for any purpose of his employer or in the performance of any duty that was related to his employment.

It seems clear that the accident did not arise in the course of his employment. He had for the time abandoned his employment and was about his own affairs. *Colucci* v. *Edison Portland Cement Co.*, 94 *N. J. L.* 542.

Our conclusion renders it unnecessary to discuss the other questions raised.

The judgment under review will be reversed and set aside, with costs.