NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

EVA MARIE THEBERGE, PETITIONER, v. PUBLIC SERVICE
ELECTRIC AND GAS COMPANY, RESPONDENT.

Decided February 3, 1947.

For the petitioner, *Herman M. Wilson.*

For the respondent, *Carl T. Freggens (David M. Sellick,* appearing).

A formal petition was filed in the above-entitled matter claiming compensation by virtue of the provisions of *R. S.* 34:15, *et seq.* An answer was duly filed by the respondent. The matter came on for hearing before this court at Newark, New Jersey, on the 8th day of January, 1947.

At the start of trial it was stipulated and agreed by and between counsel that the court should first determine the question of liability before any witnesses were brought in to testify on the question of causal relationship between the accident and the death of decedent. Petitioner claimed that the accident arose out of and in the course of decedent's employment, which the respondent denied. There was little dispute on the factual situation at the close of trial on the liability phase of the case. The main dispute was as to whether the facts showed a compensable case under our law.

The respondent, a public utility corporation, owned a gas plant and office at 1025 McCarter Highway, Newark, New

Jersey, where and from which employees worked who took care of the distribution of illuminating gas from the gas plant to respondent's customers. Across McCarter Highway directly to the east were additional buildings and an auto parking yard or court also owned by respondent. The auto parking yard was only about 85 feet square; was fenced abutting McCarter Highway, and paved with asphalt. It was used for storage of some of respondent's 50 or 60 trucks and autos when the vehicles were not in use. Due to the nature of respondent's business, vehicles moved in and out of the yard at all hours, and there was a gasoline pump located in same to take care of fueling the vehicles. On April 30th, 1946, during the noon lunch period, a game of baseball was started by some of the employees. This game consisted of the batter hitting the ball after which the various players engaged in the sport would field it and throw and catch the ball among themselves before returning it to the batter. Neither the respondent nor the players provided any bases or base lines and there was no base running. This game was being played during the employees' noon lunch period as stated, and the decedent, George Theberge, participated in the sport during his lunch period for which he was not paid by the respondent. He was free to spend his lunch period as he chose and the matter of staying on the premises or leaving them was his free personal choice. Theberge had been playing about ten minutes when one of the other players threw the ball to him, and after catching it he twisted and fell, fracturing his right leg. He was taken to a hospital where he died on May 12th, 1946. Theberge was employed by the respondent as a gas regulator man and his duties consisted of the regulation of gas devices and painting gas holders at the gas plant and in the territory served by the respondent. He was not hired or employed as a ballplayer and the matter of an employee's ballplaying ability was not considered on his hire or discharge. The ballplaying was started by the employees with their own equipment during their leisure time in the noon lunch period and the game was open to anyone who cared to participate. Across the street to the north of the office and about the same distance from

same as the auto parking yard, there was a city park and it had been the practice of some of the employees to play ball in either the city park or auto parking yard for the past three to ten years during spring and summer lunch periods. The number playing varied from two to ten men, and whether the ballplaying started at all, or in the city park or garage yard was a matter of chance and choice exercised by the employees. The employer kept no record of what the men did on their leisure time, and the method and means of spending this time was left to the individual employee.

Some employees of the gas plant had voluntarily formed an athletic and social "association" among themselves which, among other things, participated in sports activities with other Public Service units. This group of employees financed itself from membership dues, purchased equipment with no financial aid from the employer and elected its own officers free from any control by the respondent. Theberge, who was forty-seven years of age and weighed over 200 pounds, was not a member of the team already selected by the employees to represent them in baseball games during the coming summer season. The day of the accident was only the second or third time the employees had played ball in the spring of 1946, and Mr. Hopkins, the superintendent of respondent, testified that he did not know the employees played ball in the garage yard in 1946, or any year prior thereto, although he had seen them playing in the city park previously mentioned in past years. Other employees testified that in a prior year the glass top on the gasoline pump and several windows in an adjacent building had been broken and the employees had been told to stop playing in the garage yard. There was a rest and recreation room in a building some distance from the auto parking yard where employees could eat and rest and seek recreation during the lunch period and other non-working hours. This room was not connected with or any part of the auto parking yard where the accident occurred. The room was furnished for recreational purposes by equipment furnished and supplied by the employees' athletic and social club, and whether the men spent any time there was optional with themselves. The rest and recreation

room and ball team are cited by the petitioner as showing the respondent supported recreational activities. I do not feel this contention helps the petitioner, and, in addition, find they are separate and distinct from the impromptu ballplaying indulged in by the employees during their lunch period on the day of the accident.

The testimony makes it quite clear that the ballplaying and not the duties connected with Theberge's job was the cause of the accident. The ballplaying was an independent act on his leisure time, having no connection with his work. There is no proof that the employer encouraged him to play ball and it was not a requirement of his job. The testimony and facts of the case indicate that it was spring and some of the men started playing baseball, and on the second or third time of playing in 1946, the accident occurred. This is regrettable, but it does not mean the respondent is liable under the Workmen's Compensation Act.

In *Conklin* v. *Brighton Mills, Inc.*, 105 *N. J. L.* 386; 144 *Atl. Rep.* 815, the Court of Errors and Appeals held:

"Manifestly the mere happening of this accident upon the premises of the defendant, caused by a person not engaged in the prosecution of the master's work, and at a time when the servant was free to indulge his spare time for diversion or other personal conduct, free from the master's supervision, could impose no liability upon the master. * * *"

In *Levengood* v. *New York Shipbuilding Corp.*, 24 *N. J. Mis. R.* 273; 48 *Atl. Rep.* (2d) 570, a petitioner was denied compensation against his employer where he was in his employer's parking lot changing a tire on his own car after working hours, the court holding that at the time of injury he had embarked on a personal venture.

The petitioner cited among other cases the case of *Conklin* v. *Kansas City Public Service Co.*, 226 *Mo. App.* 309; 41 *S. W. Rep.* (2d) 608, which case involved injuries received in an employees' leisure time baseball game, as authority for holding the accident in this case compensable. This Conklin case was limited to its own facts and distinguished by the same court that decided it in *Dunnaway* v. *Stone & Webster Engineering Corp. et al.*, 227 *Mo. App.* 1211; 61 *S. W. Rep.*

(*2d*) 398, another case involving a noon hour recreational accident to an employee. In 1946 the Michigan Supreme Court in a unanimous opinion in *Luteran* v. *Ford Motor Co.,* 313 *Mich.* 487; 21 *N. W. Rep.* (*2d*) 825, denied compensation to an employee injured at a leisure period baseball game on facts somewhat analogous to the factual situation in our present case.

In *Porowski* v. *American Can Co.,* 15 *N. J. Mis. R.* 316; 191 *Atl. Rep.* 296, I held that the petitioner in that case involving ballplaying had not sustained the burden of proving his injury due to an accident arising out of and in the course of employment, and dismissed the petition. To my knowledge the Porowski case has been followed several times since by trial courts in denying compensation to employees who suffered injuries while playing baseball in their nonworking hours when the employer obtained no advantage because of the ballplaying.

I do find and determine from the testimony that the petitioner's decedent was engaged in ballplaying for his own amusement during his leisure time on April 30th, 1946. During this period he was not paid by the respondent and was free to spend the noon lunch period on or off the premises as he pleased. He chose to play ball for his own amusement. The ballplaying indulged in was not sponsored or ordered by the respondent company. The equipment was provided by the players themselves. The ball playing was the motive for decedent's movement at the time of his injury and not the duties of his job as a gas regulator man. The risk of injury and the injury itself in this case arose out of the ballplaying and not the decedent's duties in connection with his job. The respondent is a public utility, and the ballplaying by decedent was not shown to have any connection with respondent's business. The employer provided a rest and recreation room for the employees who wanted to stay around the premises during their lunch period, and when Theberge started playing ball on asphalt during his leisure time, he placed himself in a dangerous position by his own choice.

Therefore, considering all the evidence and the law applicable thereto, I find that the petitioner has failed to sustain

154

the burden of proving an accident to the decedent arising out of and in the course of his employment with the respondent.

It is, therefore, on this 3d day of February, 1947, ordered that this claim petition be and the same is hereby dismissed.

JOHN C. WEGNER,
*Deputy Commissioner.*