102 N.J. Super. 26 (1968)
245 A.2d 215
KENNETH E. STONE; LOTTA C. BURKE; DAVID L. STOKES; AND M. GLORIA JANWICH, PLAINTIFFS-RESPONDENTS,
v.
FLOYD WYCKOFF, TOWNSHIP CLERK OF THE TOWNSHIP OF MARLBORO; GEORGE E. CREEVY AND ALFRED L. STORER, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 17, 1968.
Remanded June 20, 1968.
Decided July 16, 1968.
*29 Before Judges CONFORD, LABRECQUE and HALPERN.
*30 Mr. Milton Kosene, argued the cause for appellant Floyd Wyckoff.
Mr. Herbert B. Bierman, argued the cause for appellants George E. Creevy and Alfred L. Storer.
Mr. James R. Minogue, argued the cause for respondents.
The opinion of the court was delivered by CONFORD, S.J.A.D.
This is an action in lieu of prerogative writs by four citizens of Marlboro to compel the township clerk to call for a recall election in respect of the two defendant-councilmen, pursuant to N.J.S.A. 40:69A-169 et seq. Defendants resisted the complaint in the Law Division on grounds of fraud in the preparation, and insufficiency of the recall petitions in various respects. Certain constitutional objections to the statute were also raised in the answers filed by defendants, but were not advanced at the hearings in the Law Division. These and some added constitutional points are nevertheless argued on the appeal.
The trial court after a hearing ruled against defendants on all points raised before it. We remanded for the taking of additional proofs and the making of further findings as to the genuineness of signatures on the two recall petitions. This has been done, and the final judgment entered in the first instance in favor of plaintiffs and against defendants on cross-motions for summary judgment and the first hearing of factual issues has been reaffirmed.

I
After the original hearing, the trial court found no evidence of fraud in the circulation and signing of the recall petitions, and we concur.

II
At the original hearing, a handwriting expert testified on behalf of defendants that in a considerable number of *31 groupings of signatures on both petitions a single person had signed all names in each of the particular groupings. As to most of these groupings of names plaintiffs offered the opposing testimony of individual purported signatories that all of the signatures in the particular grouping impugned were genuine. As to substantially all other groupings, the parties stipulated that persons were present in court, either signers or petition carriers, who would testify to the same effect. Since both sides agreed at the oral argument that the trial judge did not examine the signatures on the original petitions in appraising credibility, and because we did not deem such a stipulation a satisfactory method of weighing comparative weight and credibility, we remanded with directions that the "stipulated" witnesses appear and testify at a new hearing and that the judge examine the questioned signatures on the original petitions.
As noted above, these directions have been complied with (except as to 3 or 4 signatures where the witnesses could not be produced at the remand hearing), and the trial judge has made individual findings of genuineness of all questioned signatures. In each instance the judge indicated the specific factual basis for his findings, and we are satisfied that there is no ground for appellate interference with any of the determinations of fact thus made.
The supplemental brief of defendants makes only two points concerning the remand hearing. First, it is pointed out that one witness-signatory was concededly mistaken as to the identity of the petition carrier who obtained her signature, and that she was recalled to the stand to correct her testimony. This, however, was merely a circumstance going to credibility, and the judge was entitled to find that the witness was nevertheless truthful concerning the genuineness of the signatures of herself and her husband. Second, a point of comparable import is made with respect to the statutory affidavit of one of the petition carriers. The affidavit was to the effect that all signatures on the petition he carried were genuine whereas he admitted in his testimony that one signature *32 was produced out of his sight when a signing husband took the petition to a bedroom for his wife to sign also. Defendants ask that on the basis of the foregoing we invalidate all the signatures on the petition circulated by this particular carrier. The request is frivolous. The technical untruthfulness of the affidavit in the respect noted does not necessarily condemn the carrier's testimony as to the genuineness of all other signatures on his petition. The matter was one for disposition within the fact-finding function of the judge. As for the signatures of the husband and wife in this instance, the judge decided, on an inspection of the signatures on the petition and those of the same persons on the original voting records, that the signatures on the petition were genuine. There is no tenable basis for rejecting that finding.

III
It is contended that the trial judge "created an unfair climate in the courtroom and deprived defendants of a fair trial." We need not discuss the detailed allegations in this regard. We find the complaint without merit.

IV
Defendants argue that since the statute requires that where there are petitions for the recall of more than one officer their positions on the ballot should be in the order of the filing of the petitions, N.J.S.A. 40:69A-173, and since the township clerk could not determine the order in which the recall petitions had actually been filed, the petitions should be dismissed. The incongruity of any such construction of the statute, which would cripple the whole recall effort merely because the two petitions had been filed together, is manifest on the face of its statement. If the clerk is actually unable to determine the order of filing, he may position the names on the ballot in such reasonable manner as he chooses. As a rule of general procedure, however, the statutory intention should be subserved by the clerk requesting *33 a filer of more than one petition to specify the order in which it is desired that they be filed.

V
Defendants contend that a considerable number of signatures on the petitions are invalid because they do not satisfy the requirement of N.J.S.A. 40:69A-170 that the signer specify "his place of residence giving the street and number or other sufficient designation if there shall be no street and number." It is clear from the evidence that while every street or road in Marlboro has a name few if any dwellings have street numbers. For postal purposes there are R.D., and P.O. box, numbers. Defendants contend that the statute is not satisfied unless the petition signer gives the street name and P.O. box number (where there is no street number). They argue that a street name and an R.D. number are insufficient because in the absence of a box number "it would be practically impossible to locate the residence" of the person. This is not explained. Yet they also say that no one has both an R.D. and P.O. box number. By this contention, therefore, a voter without a box number would be unable to sign a recall petition. The unreasonableness of the position is manifest.
Election laws are to be liberally construed so as to effectuate their purpose. Wene v. Meyner, 13 N.J. 185 (1953). It appears to us that in a situation such as this, where a municipality has named streets but no house numbers, it is reasonable to construe the statute as satisfied if the street name alone is given, whether or not an R.D. or P.O. box number is also supplied. On the other hand, we disagree with the plaintiffs' argument that even the street name is dispensable on the petition. The statutory language should to this extent be respected, since at least that minimum information is needed by the clerk to conveniently perform his statutory function of checking petitions for imposters within the limited time available to him.
*34 Our own inspection of the petitions reveal that 111 of the signatures on the Creevy petition and 110 of those on the Storer petition lack street names, and these will therefore be held disqualified.

VI
Defendants contend that any signature not appearing on the petitions in the identical form as on the original voter registration ledger is for that reason alone disqualified; e.g., "Mrs. John Jones" on the petition will not do for one who has registered as "Adele Jones." The statute merely requires that the signers be "qualified voters," N.J.S.A. 40:69A-169, not that their signature be in the form identical with that appearing on the registration records. Many people have more than one "signature." Admittedly the clerk may have some difficulty in identifying some voters where the form of signature on the petition varies from that in the registration book, and he may for administrative purposes therefore require some proof of identity or reject the name. But once the matter reaches a judicial tribunal, as here, a signature consistent with that of the registered voter, of one residing at the recorded address of the registrant, must be deemed prima facie that of the registered voter, and the burden is on any challenger to show the contrary. Defendants have not met this burden as to any of the names here challenged.

VII
Defendant township clerk rejected eleven signatures on the Creevy petition and nine on the Storer petition as illegible. We regard this action as arbitrary, since many people have signatures which to others are illegible. There is no testimony that a comparison of these signatures with those of persons residing at the same addresses, as the signatures appear on the registration records, shows any significant variance. As in the situation discussed in VI, supra, the presumption *35 of genuineness of the signatures as those of qualified voters has not been overcome.

VIII
Defendants argue that certain of the signatories on both petitions are disqualified as being persons who, though "registered" to vote as of the petition date, were not then "qualified" to vote. This argument is erected on the hypothesis that if the recall election were to have been held on the date the petitions were signed these persons would not have been qualified to vote because not registered at least forty days prior thereto. N.J.S.A. 19:31-6. However, under the recall statute, the election could not be held less than 60 days after the filing of the petition. N.J.S.A. 40:69A-171. By then all the registered signatories would be qualified to vote. By "qualified" the statute as a matter of good sense must be deemed to mean registered, and qualified by the time the election will have been held. Defendants' position is consequently without merit.

IX
It is urged by defendants that the petitions were defective because only the face page and not all succeeding pages of each stapled petition carried by a particular carrier contained the carrier's statutory affidavit and the "statement of causes for removal." N.J.S.A. 40:69A-169, 170. We disagree with this construction of the act. While Section 170 says, in effect, that the affidavit must appear on each "paper," we construe this to refer to situations where a petition carrier proffers to a prospective signer a single isolated sheet, not one where he proffers a stapled petition with multiple pages. In the latter case it is the statutory contemplation that the signer can see and read the statement of causes for removal on the face page of the petition and the carrier may make a single affidavit on the last page. To require an affidavit and statement on each page might leave *36 little if any room for signatures  an unthinkable legislative intent. The uncontradicted proof here was that in all cases the petition pages were stapled together when signed by the voters.

X
A number of constitutional points are urged on appeal. We would be justified in rejecting them out of hand because they were not presented to the trial court. However, none of them has merit.

A
It is argued that N.J.S.A. 40:69A-168 is defective for failing to fix standards in providing that an elected officer may be removed "for cause connected with his office * * *." This is a sufficient standard. Cf. Westpy v. Burnett, 82 N.J. Super. 239 (App. Div. 1964), affirmed 41 N.J. 554 (1964). The specific causes for removal given in the instant petitions are clearly adequate. Ibid.

B
It is also argued that recall under the circumstances here presented would be cruel and inhuman punishment of the recalled officers. This is sheer frivolity.

C
Lack of opportunity of the impugned councilmen to meet the merits of the "Statement of Causes for Removal" in a court of law is said to constitute a denial of due process. This is frivolous. The same applies to the contention that the right of the defendant councilmen to hold office for the elected term of four years is a vested property right.

D
The recall statute is argued to be unfair in that defendants must persuade at least 50% of the voters at the *37 election to vote against recall whereas in the same election successor councilmen can be elected (if the recall carries) by a mere plurality. This contrast, it is contended, constitutes a denial of due process, equal protection and the privileges or immunities of citizens of the United States. We regard the argument as totally without merit.

CONCLUSION
Under the statutory requirement of signatures of qualified voters equal to 25% of the voter registration each recall petition needed 684 signatures. The Creevy petition had 827; the Storer petition 823. We have hereinabove disqualified 111 of the Creevy signatures and 110 of the Storer (for lack of street addresses). As we have held all the other signatures unexceptionable it follows that each of plaintiffs' petitions retains an adequate margin of valid signatures.
The judgment is therefore affirmed.